**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| YOLANDA BARNETT, | ) | CASE NO. 4:25-CV-02625-JRA |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) | CARMEN E. HENDERSON |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Yolanda Barnett ("Barnett" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On October 5, 2023, Barnett filed applications for DIB and SSI, alleging a disability onset date of June 6, 2023, and claiming she was disabled due to PTSD, bipolar disorder/manic depression, and generalized anxiety disorder. (ECF No. 8, PageID #: 95-96). The applications were denied initially and upon reconsideration, and Barnett requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8, PageID #: 152-53). On November 21, 2024, an ALJ held a hearing,

during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 8, PageID #: 62-94). On February 24, 2025, the ALJ issued a written decision finding Barnett was not disabled. (ECF No. 8, PageID #: 48-57). The ALJ's decision became final on October 6, 2025, when the Appeals Council declined further review. (ECF No. 8, PageID #: 34-36).

On December 3, 2025, Barnett filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 10, 11). Barnett asserts the following assignment of error:

> The ALJ's RFC is not supported by substantial evidence because he failed to appropriately evaluate the opinion of the consultative examiner pursuant to 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c.

(ECF No. 9).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony[1] from Barnett's hearing:

> At the hearing, the claimant alleged that she experiences hallucination, premonitions, difficulty with her ability to interact with others, and memory. The claimant also alleges that some people trigger her memories of past abuse. She also indicated difficulty dealing with some supervision. Her memory difficulties result in her forgetting to take her medications at times.

(ECF Doc. 8, PageID #: 53).

### B. Relevant Medical Evidence

The ALJ also summarized Barnett's health records and symptoms:

> during an examination in October 2019, the claimant's memory was intact, intelligence average, and concentration/attention intact (Exhibit 2F at 15). However, she exhibited impaired impulse control and insight, but intact judgment. She was well-groomed and cooperative, but suspicious. Her mood was euthymic, affect appropriate, and thought process intact.
>
> On follow-up in March 2020, the claimant exhibited good eye contact, and no

[1] The assignment of error relates solely to Claimant's mental impairment, so only that evidence is presented here.

> psychomotor agitation or delay (Exhibit 2F at 16). She described her mood as content and her emotional expression was pleasant. Thoughts were organized, fluent, and coherent, memory, concentration, attention, and thought processes appeared intact, and the claimant was well groomed and dressed appropriately for the season/weather. The claimant's affect appeared within normal range, speech appeared within normal range, and intelligence average.
>
> In May 2023, the claimant re-started treatment for PTSD, anxiety, and depression (Exhibit 4F at 6). She reported experiencing difficulty with her memory and suicidal thoughts because she was off her medication. On examination, the claimant was cooperative, with normal speech, anxious mood, fair insight and judgment, and linear, logical, and goal directed thought process. These findings were essentially unchanged on follow-up (Exhibit 5F at 7). The claimant responded well to cognitive behavioral therapy to improve her thought process and coping skills (Exhibit 5F at 9). She denied psychiatric symptoms on follow-up (Exhibit 6F at 3).

(ECF Doc. 8, PageID #: 53-54).

### C. Opinion Evidence at Issue

The ALJ discussed the testimony of consultative examiner Natalie Whitlow, Ph.D., as follows:

> The undersigned has considered the medical opinions of record in rendering this decision. Natalie Whitlow, Ph.D., examined the claimant at the request of the DDD on January 13, 2025 (Exhibit 10F). Dr. Whitlow concluded that the claimant is limited in her ability to carry out instructions, follow through and complete tasks. She would also be limited in her ability to respond appropriately to supervision and coworkers, as well as respond appropriately to work pressures.
>
> The undersigned does not find the opinions of Dr. Whitlow persuasive as they are vague and provide no vocationally relevant conclusions with regard to the claimant's functioning. Her objective findings also do not support her conclusions. Dr. Whitlow noted that the claimant was appropriately dressed and groomed. Her speech was essentially normal, but also somewhat aggressive. She was irritable and anxious. Cognitive functioning was average, insight fair, but judgment poor.

(ECF Doc. 8, PageID #: 54).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027.

2. The claimant has not engaged in substantial gainful activity since June 6, 2023, the alleged onset date.

3. The claimant has the following severe impairments: posttraumatic stress disorder (PTSD), bipolar I disorder with anxious, distress, and psychotic features, and anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can carry out simple instructions in a routine work setting with few changes; and can respond appropriately to supervisors, coworkers, and work situations if the tasks performed are goal-oriented, but not at a production rate pace, the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others, and the occupation does not require tandem work or interaction with the public.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 6, 2023, through the date of this decision.

(ECF Doc. 8, PageID #: 50-57).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the

claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Barnett raises one issue on appeal: she asserts that the ALJ's RFC is not supported by substantial evidence because he failed to appropriately evaluate the opinion of the consultative examiner, Dr. Whitlow, pursuant to 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c. (ECF Doc. 9). Specifically, she argues that the ALJ failed to adhere to the articulation requirements of 20 C.F.R. § 404.1520c and, as a result, the decision lacks substantial evidence to support the ALJ's ultimate RFC finding. (*Id*., at p. 9-13). Barnett challenges the ALJ's evaluation of Dr. Whitlow's opinion in two ways. First, she asserts that the ALJ "failed to articulate a consistency or supportability analysis when disregarding the opinion of the consultative examiner." (ECF Doc. 9, p. 9-10). Second, she asserts that the ALJ misrepresented Dr. Whitlow's examination findings, and therefore failed to provide substantial evidence for his RFC determination. (*Id*. p. 11). Each of these issues will be addressed in turn.

The Commissioner responds that the ALJ properly considered the opinion of Dr. Whitlow, and supported his determination that it was "not persuasive" with substantial evidence. (ECF Doc. 10, p. 6-10).

**a. Standard for Evaluating Medical Opinions**

Social Security Regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). Medical source opinions are evaluated using

the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404.1520c(b)(2) Under the regulations, the factors of supportability and consistency are the most important factors ALJs consider to determine how persuasive they find a medical source's medical opinions. *Id*.

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)...the more persuasive the medical opinions...will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s)...is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)...." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how they considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.*

**b. Supportability and Consistency Analysis**

In articulating his basis for finding Dr. Whitlow's opinion "not persuasive," the ALJ explained:

> The undersigned does not find the opinions of Dr. Whitlow persuasive as they are vague and provide no vocationally relevant conclusions with regard to the claimant's functioning. Her objective findings also do not support her conclusions. Dr. Whitlow noted that the claimant was appropriately dressed and groomed. Her speech was essentially normal, but also somewhat aggressive. She was irritable and anxious. Cognitive functioning was average, insight fair, but judgment poor.

(ECF Doc. 8, PageID #: 54).

As the Commissioner notes, the ALJ clearly addressed the element of supportability. (ECF Doc. 10, pp. 8-9). He identified specific objective findings from Dr. Whitlow's examination that he found to be in conflict with her opined limitations. However, neither the Commissioner nor the ALJ directly address the issue of consistency in the analysis of Dr. Whitlow's opinion.

Barnett is correct that the ALJ did not explicitly indicate what record evidence he found inconsistent with Dr. Whitlow's opinion. Reading the ALJ's decision as a whole, however, the undersigned observes that the ALJ's discussion makes clear why he found Dr. Whitlow's opinion inconsistent with specific medical record evidence discussed earlier in the ALJ's opinion. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (courts look at an ALJ's decision "as a whole" when determining if it complies with the regulations).

The ALJ discussed specific medical record evidence relevant to Barnett's ability to carry out instructions and follow through and complete tasks, including:

- [T]reatment records generally document intact memory and average intelligence when the claimant is taking her medication (Exhibits 2F at 15, 16, and 5F at 7). (ECF Doc. 8, PageID #: 51).

- Thought process was also linear, logical, and goal directed (Exhibits 4F at 6 and 5F at 7). (*Id.*)

- The claimant was generally described as cooperative and pleasant with good eye contact; however, she was suspicious at times (Exhibits 2F at 15, 5F at 7, and 6F at 3). Her mood was euthymic at times and anxious at times (Exhibit 4F at 6). (*Id.* at PageID #: 52).

- The claimant's treatment records consistently document intact attention and concentration (Exhibits 2F at 15, 16, 5F at 7, and 6F at 3). (*Id.*)

- [D]uring an examination in October 2019, the claimant's memory was intact, intelligence average, and concentration/attention intact (Exhibit 2F at 15). (*Id.* at PageID #: 53).

- On follow-up in March 2020, "Thoughts were organized, fluent, and coherent, memory, concentration, attention, and thought processes appeared intact." (*Id.*)

- At a May 2023 examination, "the claimant [demonstrated] … fair insight and judgment, and linear, logical, and goal directed thought process. These findings were essentially unchanged on follow-up (Exhibit 5F at 7)." (*Id*. at PageID # 54).

The ALJ also discussed specific medical record evidence relevant to Barnett's ability to respond appropriately to supervision, coworkers and work pressures, including:

- The claimant was generally described as cooperative and pleasant with good eye contact; however, she was suspicious at times (Exhibits 2F at 15, 5F at 7, and 6F at 3). Her mood was euthymic at times and anxious at times (Exhibit 4F at 6). (*Id*. at PageID #: 52).

- The claimant's insight and judgment are generally described as intact (Exhibits 2F at 15, 4F at 6, and 5F at 7). (*Id*.)

- [D]uring an examination in October 2019, the claimant …. exhibited impaired impulse control and insight, but intact judgment. She was well-groomed and cooperative, but suspicious. Her mood was euthymic, affect appropriate, and thought process intact. (*Id*. at PageID #: 52).

- On follow-up in March 2020, "the claimant's affect appeared within normal range, speech appeared within normal range, and intelligence average." (*Id*.)

- At a May 2023 examination, "the claimant was cooperative, with normal speech, anxious mood, fair insight and judgment …. These findings were essentially unchanged on follow-up (Exhibit 5F at 7)." (*Id*. at PageID # 54).

Under 20 C.F.R. § 404.1520c(b)(2), an ALJ is required to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. The regulation does not require that this analysis be confined to the portion of the decision directly addressing the medical source's opinion. Nor does an ALJ need to use the exact words "supportability" or "consistency" to consider these factors in its credibility analysis. *See, e.g., Hannahs v. Comm'r of Soc. Sec.*, No. 3:20-cv-01905, 2021 WL 8342817, *11 (N.D. Ohio Dec. 15, 2021) (noting that other "courts have already offered the opinion that an ALJ 'need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors," and a reviewing court is able to follow the ALJ's reasoning").

Here, the ALJ discussed the medical record with sufficient specificity to build a logical bridge that enables the reviewing court to understand why the ALJ found portions of Dr. Whitlow's opinion inconsistent with other medical record evidence identified in his decision. The evidence cited by the ALJ in his discussion of the medical record allows the reviewing court to follow his reasoning regarding Dr. Whitlow's opinion. Further, because the ALJ's reasoning is clear, it is evident that remand would be futile. *See Rabbers v. Comm'r Soc. Sec*., 582 F.3d 647, 654 (6th Cir. 2009) (courts "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (citations and quotations omitted); *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game.") (citations and quotations omitted); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001) (applying harmless-error review of an ALJ's failure to mention a doctor's report when substantial evidence supported his decision). Therefore, even if the Court concluded that the ALJ erred by not specifically discussing the consistency of Dr. Whitlow's opinion, this error would be harmless, and does not require remand.

**c. Misrepresentation of Examination Findings**

Barnett also asserts that the ALJ erred by misrepresenting Dr. Whitlow's examination findings in his discussion of her opinion, particularly the findings relating to her ability to interact with others. (ECF Doc. 9, p. 11-12). She asserts that the ALJ's explanation for the finding that Dr. Whitlow's opinion was unsupported by her own examination findings relies on mis-statements of Dr. Whitlow's actual examination findings and therefore is not supported by substantial evidence. (*Id.*) The Commissioner responds that the ALJ accurately described parts

of Dr. Whitlow's opinion as "vague" and asserts that Barnett "is inviting the Court to reweigh the evidence by promoting her own alternative interpretation of the record." (ECF Doc. 10, p. 8). However, the Commissioner does not directly respond to Barnett's allegations that the ALJ mischaracterized the evidence.

Barnett focuses her assignment of error on the way the ALJ described Dr. Whitlow's opinion about her ability to interact with others. She points out that the ALJ stated that Dr. Whitlow described Barnett's speech as "essentially normal, but also somewhat aggressive." (ECF Doc. 8, PageID #: 54). This understates the finding, as the modifier "somewhat" is not part of Dr. Whitlow's description. Dr. Whitlow described Barnett's speech as "within the normative range of functioning, during this evaluation, but it is worth noting that her speech pattern was aggressive, to an inappropriate level." (*Id*., at PageID # 589). The ALJ also described Dr. Whitlow as characterizing Barnett's mood as "irritable and anxious." (*Id*., at PageID # 54). This again understates Dr. Whitlow's finding that Barnett's "in-evaluation affect was unwarrantedly and persistently irritable, angry, and aggressive and was assessed to be inappropriate." (*Id*., at PageID # 589). Finally, the ALJ noted that Dr. Whitlow assessed that Barnett's "[c]ognitive functioning was average, insight fair, but judgment poor." (*Id*., at PageID # 54). This is accurate, but omits important context. Dr. Whitlow explained that her assessment of cognitive functioning was incomplete and based largely off of Barnett's self-reports and general responses during the interview. This was because "[d]ue to the claimant's growing impatience and aggression, this evaluator made the professional decision to forgo asking the claimant assessment questions to assess her cognitive functioning." (*Id*., at PageID # 589). In other words, Barnett's symptoms impacted her ability to participate in the consultative examination significantly enough to prevent Dr. Whitlow from completing the examination.

Barnett argues that these clinical findings are, in fact, consistent with Dr. Whitlow's opined limitations, which stated that Barnett would be "limited in her ability to respond appropriately to supervision and coworkers, as well as respond appropriately to work pressures." (*Id.*, at PageID # 54). However, even if the undersigned agrees with Barnett, it does not follow that this error necessitates remand. The ALJ also found that Barnett had "moderate limitations" in her ability to interact with others. (ECF Doc. 8, PageID # 52). It is not clear that this part of the ALJ's decision is inconsistent with Dr. Whitlow's conclusion that Barnett has "limitations" in the domain of social interaction, because Dr. Whitlow did not specify a degree of limitation.

Barnett agrees with the Commissioner that "there are portions of Dr. Whitlow's assessment of the Plaintiff's functional abilities that could be defined as vague." (ECF Doc. 9, p. 8). However, she asserts that Dr. Whitlow's opinion regarding her interaction with others can be translated into specific, vocational terms. (*Id.*) The undersigned disagrees. Dr. Whitlow opines that Barnett has "limitations" in the domain of social interaction because Barnett's psychological symptoms "cause[] her … to struggle with rational thinking to combat thoughts that people are a threat, resulting in her being defensive, irritable, angry, aggressive, disagreeable, and combative, among other things, diminishing her interpersonal functioning, including her ability to respond appropriate to supervision and coworkers." (ECF Doc. 8, PageID # 593). The ALJ agreed that Barnett had limitations in the domain of social interaction. He assessed these limitations as moderate, and addressed them in his RFC determination by explaining that Barnett "can respond appropriately to supervisors, coworkers, and work situations if the tasks performed are goal-oriented, but not at a production rate pace, the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or

directing the work of others, and the occupation does not require tandem work or interaction with the public." (*Id*. at PageID #: 52).

Because Dr. Whitlow did not specify a level of limitation, her opinion can be read to support either the "moderate limitation" assessed by the ALJ or the more restrictive limitations advocated for by Barnett. "This court's role in considering a social security appeal, however, does not include reviewing the evidence de novo, making credibility determinations, or reweighing the evidence." *Bankert v. Saul*, No. 5:18-CV-2016, 2019 WL 4736489, at *8 (N.D. Ohio Sept. 27, 2019) (citing *Brainard v. Sec'y of Health & Hum. Servs*., 889 F.2d 679, 681 (6th Cir. 1989)). Where the ALJ has supported his findings with substantial evidence, this Court should uphold them, "even if a reviewing court would decide the matter differently." *Olive v. Comm'r of Soc. Sec.,* No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)).

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Barnett's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: September 9, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).